[No. 2477]

## N. B. CHRISTENSEN, APPELLANT, *v.* VALDEMAR No. 12 OF THE DANISH SOCIETY OF CALIFORNIA AND NEVADA (A CORPORATION), FORMERLY KNOWN AS VALDEMAR No. 12 OF THE DANISH SOCIETY DANIA, AND A FRATERNAL ORGANIZATION, RESPONDENT.

[197 Pac. 688]

1. LANDLORD AND TENANT—LANDLORD'S COMPLAINT HELD NOT TO STATE CAUSE OF ACTION.
   Complaint by landlord, alleging lease to defendant lodge containing condition that lessee remodel the premises for lodge purposes, and that a statement of expense of remodeling be signed by both parties and attached to lease, such sum to be credited on the rent as it accrues, and that if lessor terminated lease on three months' notice he should pay lessee any balance of remodeling expense and alleging the signing and attachment of such statement and service of notice to terminate the tenancy, but demanding a statement of balance due on the remodeling account and praying for an accounting and termination of the lease, did not state a cause of action, as the prior statement fixed the remodeling expenses.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Action by N. B. Christensen against the Valdemar No. 12 of the Danish Society Dania of California and Nevada, formerly known as Valdemar No. 12 of the Danish Society Dania, a fraternal organization. From judgment for defendant, plaintiff appeals. **Affirmed.**

*Sardis Summerfield,* for Appellant:

Claiming    that    the    defeasance    contingency    had

occurred, appellant gave the required three months' notice to respondent to terminate its tenancy, demanding a statement of the amount it claimed to be due, in order that appellant might pay said amount if correct. Respondent refused to answer said notice in any respect. Appellant has done everything possible to terminate the tenancy. The subject-matter of the action embraces all transactions had because of the conditions of the lease. Any counter-claim existing at the time of the commencement of the action, if within the permissive provisions of our statute, is a matter of defense, to be pleaded by respondent. Rev. Laws, 5047, 5048. Any such counter-claim is "a cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim," and is necessarily "connected with the subject of the action." Lapham v. Osborne, 20 Nev. 176.

The written notice served upon respondent by appellant, and the former's indicated unwillingness to accept it, in legal effect amounted to a tender and a refusal to accept. Lynch v. Postelthwait, 12 Am. Dec. 495; Moynahan v. Moore, 77 Am. Dec. 486. A plea of tender is sufficient, although the money is not brought into court. Loughborough v. McNevin, 74 Cal. 256; Kortwright v. Cady, 21 N. Y. 343; Miller v. Cox, 96 Cal. 346.

A primary rule of construction of such written instruments as the lease in question is that of giving effect and meaning to every part of the instrument, each clause being considered separately, and each separate part being viewed in the light of other parts. Gibson v. Bozy, 28 Mo. 478; Collins v. Lavelle, 44 Vt. 230; McCoy v. Fahrney, 182 Ill. 60; Uhl v. Ohio River Railroad Co., 51 W. Va. 106.

*Brown & Belford,* for Respondent:

The action of the trial court in sustaining the demurrer to the complaint was not only entirely proper, but any other interpretation of the complaint than that placed upon it by the court would have been to read into

the pleading elements urged for the first time on appeal. Two contingencies must exist in order to confer upon the plaintiff the right of possession of the premises: First, legal authorization of gambling; second, reimbursement of defendant for remodeling and refitting of the lodge rooms. The complaint contains no allegation either of reimbursement or of offer to reimburse; and, while the lower court did not pass upon the question of gambling, it has not been legally authorized in this state. Rev. Laws, 6518.

By the Court, COLEMAN, J.:

This appeal was taken upon the judgment roll alone. We will refer to the parties as they were designated in the trial court.

Plaintiff pleaded the execution of an agreement on September 5, 1911, between one Dreyer and the defendant, wherein the said Dreyer leased unto the defendant the upper story of certain premises, upon the condition that the lessee should, at its own expense, remodel, improve, and make suitable such premises for lodge purposes. It is provided in the agreement, which is made a part of the complaint, that upon the completion of such improvements the total cost thereof should be embodied in a statement, to be verified and signed by both parties ·to said agreement, and to be attached thereto and become a part thereof. The complaint pleads as a part of the agreement a statement which is signed by said Dreyer and the trustees of the defendant, showing items expended, aggregating $1,873.35. By the terms of the agreement of lease, the monthly rental is fixed at $10, which sum is to be credited each month upon the amount so expended in remodeling the premises, until the entire amount of the expenditure is consumed. The agreement recites the enactment by the legislature of a statute making it unlawful to gamble in the State of Nevada, and it is agreed that the lease shall run until the full sum so expended by the lessee

is consumed in the payment of rent at $10 per month, unless gambling should sooner become "legally authorized," in which event the lessor might terminate the lease by giving the lessee three months' notice and paying in cash the difference between the amount paid as rental and the sum so expended by the lessee in remodeling and improving the premises. The agreement is made binding upon the grantees and assigns of the respective parties. It is alleged that the plaintiff is now the owner of the premises in question.

It is also averred that on May 5, 1920, a written notice was served upon the defendant by the plaintiff, notifying it that gambling had been "legally authorized" in the State of Nevada, and that the lease mentioned would terminate August 6, 1920; demanding a statement of the amount due from plaintiff to defendant as the balance due upon the expenditures made in remodeling the premises, that payment thereof might be made; and also demanding possession of the premises on August 6, 1920. The defendant refused to consider the lease as canceled, to furnish a statement, or to surrender possession of the premises. The complaint prays that a decree be entered directing an accounting, adjudging that the lease be terminated and forfeited, and for general relief.

A general demurrer was filed to the complaint, and, upon its being sustained, plaintiff declining to amend, judgment was entered in favor of the defendant; hence this appeal.

The only question for determination is: Does the complaint state a cause of action? It is the contention of the defendant that the complaint shows that the amount of the expense incurred by the defendant in remodeling the building was agreed upon by the lessor and lessee on November 20, 1911, to be the sum of $1,873.35, and that it was the duty of the plaintiff to allege the payment or tender to defendant of the difference between that sum and the sum paid by defendant

as rentals, at the rate of $10 per month from
September 5, 1911; and, failing so to do, the com-
plaint does not state a cause of action. It is also con-
tended by the defendant that gambling has not been
legalized in this state.

It is contended by the plaintiff that the "gross amount
to be liquidated does not appear from anything con-
tained in the lease to' be limited to the amount in the
statement attached to the lease," and that the plaintiff
could not be charged with knowledge of additional
expenditures made by the defendant; and hence it is
insisted that the complaint is good.

The position taken by the plaintiff is untenable. The
lease clearly provides that the lessee might "remodel"
and "improve" the upper story of the premises in
question. This language is used several times in the
lease, and it is clear from these words and the context
that the improvements to be made were limited to those
made in the progress of the remodeling, and that all of
such expenditures should be listed in the statement to
be attached to the lease, and which was approved and
attached thereto. By rendering the itemized statement
the defendant expressly recognized that the remodeling
and improving contemplated by the lease had been com-
pleted on November 11, 1911. The approving and
attaching of the statement is of itself an interpretation
by the parties to the lease to the effect that it contained
all of the items chargeable, or that could be chargeable,
on account of improving and remodeling by the lessee.
There is a wide difference between expenses incurred
in making improvements and in remodeling and those
incurred in making repairs. Repairs were not contem-
plated by the parties. If the expenses to be listed in the
statement and approved by the parties, as contemplated
by the lease, were not limited to those incurred in
remodeling, we are at a loss to know at what time it
was intended by the parties that such statement should
be approved and attached to the lease. If we accept the
theory of counsel for plaintiff, remodeling and improv-

ing may continue through all time, and a perpetual lease be created by the acts of the defendant, unless gambling becomes, or has become, lawful. It hardly seems probable that the lessor could have intended the making of such a freak contract. It appears from the language of the lease that the sole purpose of attaching the statement was to enable the parties, immediately after the completion of the work of remodeling, to determine from the lease itself how long it would run; or, in case gambling should become legalized, and the lease terminated because thereof, the amount that the lessor would have to pay to effectuate its cancelation. No other reasonable interpretation can be placed upon the lease.

Plaintiff's brief suggests other points concerning the matter of which we have disposed, but we doubt if his counsel, so learned and experienced, can be serious in their presentation. At any rate, they do not deserve consideration in this opinion.

As to the contention that gambling is "legally authorized" in Nevada, we might ask: What is meant by the provision relative to when "gambling shall be legally authorized"? Does it mean that gambling shall be authorized to the extent that a gambling debt may be a valuable consideration to sustain a contract, or in the sense that one shall not be subject to criminal prosecution for gambling or operating a gambling game? Does it mean gambling as it existed prior to the antigambling law of 1909? Does it mean gambling to a limited extent only? In answering the last question, we might have to determine whether gambling was "legally authorized" in any instance or to any extent at the time the lease was executed. If the last suggestion should be answered in the affirmative, can it be said that the contract in question is ambiguous? These questions, among others, might have to be disposed of if at any time we are compelled to pass upon the contention that gambling is "legally authorized" in the state. However, since the complaint does not state a cause of

action, as pointed out, it is not necessary to dispose of the contention that gambling is now "legally authorized."

It is ordered that the judgment appealed from be affirmed.